**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
SAM BREWI, individuals and on behalf of all
those similarly situated,

                                  Plaintiff,                      **REPORT &**
                                                           **RECOMMENDATION**

                 - against -
                                                     CV 18-3966 (JMA) (AKT)

RMS – RECOVERY MANAGEMENT
SERVICES, INC., and ACADEMY OF ART
UNIVERSITY

                                 Defendants.
-----------------------------------------------------------X

A. **KATHLEEN TOMLINSON, Magistrate Judge:**

I.       **PRELIMINARY STATEMENT**

Plaintiff Sam Brewi ("Plaintiff" or "Brewi") brings this action individually and on behalf of all others similarly situated, against RMS-Recovery Management Services, Inc. ("RMS") and Academy of Art University ("Academy") (collectively, the "Defendants") for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq* ("FDCPA"). *See generally* Complaint ("Compl.") [DE 1]; Amended Complaint ("Am. Compl.") [DE 12]. The claims arise from two debt collection letters – dated May 18, 2017 and July 27, 2017 – sent to Plaintiff concerning an outstanding debt which Plaintiff purportedly owed to Academy. *Id*. As discussed below, although the May 2017 letter is printed on Academy letterhead and the July 2017 letter on RMS letterhead, Plaintiff alleges, in the alternative, that either RMS or Academy sent both letters to him, falsely implying that the other entity was involved in collecting Plaintiff's outstanding debt to Academy. *See generally* Am. Compl.

Academy has moved, pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") to dismiss Plaintiff's claims against Academy on the grounds that (1) this action as to

Academy is barred by the one-year statute of limitations for FDCPA cases, and (2) defendant Academy is not a debt collector. *See* Defendants' Motion to Dismiss [DE 28]; Defendants' Memorandum in Support of Motion to Dismiss (Defs.' Mem.") [DE 29]. Plaintiff opposes the motion asserting that the action is timely and that Academy is a debt collector under the terms of the FDCPA. *See generally* Plaintiff's Memorandum in Opposition ("Pl.'s Mem.") [DE 30]. On November 13, 2019, Judge Azrack referred the matter to this Court. *See* November 12, 2019 Minute Entry [DE 35]. For the reasons which follow, the Court respectfully recommends to Judge Azrack that Academy's motion to dismiss, pursuant to Rule 12(b)(6), be DENIED.

## II.     BACKGROUND

Plaintiff commenced this action on July 10, 2018 against RMS for various violations of the FDCPA in connection with the July 27, 2017 letter sent to Plaintiff on RMS letterhead concerning a debt Plaintiff owed to Academy in the amount of $413.98 (the "Debt"). *See generally* Compl. Among other things, Plaintiff alleged that the July 2017 letter failed to provide: (1) the minimum amount Plaintiff owed at the time the letter was received; (2) whether the debt was subject to the accrual of additional interest and/or fees; and (3) information that would allow Plaintiff to determine what he would need to pay to resolve the debt at any given time. *See id*. ¶¶ 21, 23, 34. On October 23, 2018, Plaintiff filed his Amended Complaint, naming Academy as an additional defendant and alleging further FDCPA violations in connection with the May 2017 letter to Plaintiff on Academy's letterhead concerning the Debt. *See generally* Am Compl.

Unless otherwise noted, the following facts are drawn from the Amended Complaint and are construed in favor of the Plaintiff as required under the standard of review for Rule 12(b)(6) motions. The Plaintiff is an individual, residing in Suffolk County, New York, who incurred the

Debt with Academy for personal purposes.  *See id*. ¶¶ 5-12.  Sometime after Plaintiff incurred the Debt, he fell behind on the payments owed.  *Id.* at    ¶ 13.

In an effort to collect the Debt, Academy or RMS sent Plaintiff letters dated May 18, 2017 and July 27, 2017 on Academy and RMS letterhead respectively.  *Id.* ¶¶ 14-15.  Notably, both letters use the same typeface, style and format as well as the same return address – P.O. Box 505 Linden MI 4845.  In addition, both have identical Account/Reference Numbers – 04513298-[redacted].  *Id.* ¶¶ 16-19.  The *May 2017* letter informed Plaintiff of the principal balance of the Debt and advised that Academy would refer the Debt to RMS, a collection agency, if Academy did not receive payment within 30 days.  The letter states in pertinent part that:

> [y]our University account 04513298 [] is past due in the amount of $413.98. If Academy of Art University does not receive payment within 30 days from the date of this letter, your account will be placed with RMS - Recovery Management Services, Inc., a collection agency. If your account is placed with RMS - Recovery Management Services, Inc., an additional amount may be added to the balance to cover collection fees and default interest. Once placed with RMS your account may be reported to the National Credit Bureaus. If you have any questions regarding the debt or need to set up a payment arrangement, please contact Academy of Art University at 415-618-6496. Payments may be remitted payable to Academy of Art University.

*Id.*, Ex 1.  The *July 2017* letter informed Plaintiff that a "Debt Counselor" at RMS had unsuccessfully attempted to contact Plaintiff regarding his outstanding account balance with Academy.  *Id.*  That letter states in pertinent part that:

> I have been attempting to contact you regarding the above referenced account. To date I have been unable to reach you. Please contact me at your earliest convenience to resolve this matter. I can be reached toll-free at 800-932-2851 *X* 143. To view your account online, go to RMSEZPAY .COM. Your RMS - Recovery Management Services, Inc. ID number is required to access account information on the website: 2024-Please contact at 800-932-2851 *x* 143.

*Id.*, Ex. 2.  Although the letters are conspicuously dated, no one has provided the Court with definitive dates as to when Plaintiff received the letters.

3

Plaintiff commenced this lawsuit against RMS on July 10, 2018 and filed the Amended Complaint against both RMS and Academy on October 23, 2018. The Amended Complaint asserts that "it is beyond clear that the letters were sent by the same entity." Am. Compl. ¶27. In pertinent part, the Amended Complaint alleges the following:

> 28. If Academy sent the letters, it's [sic] use of RMS's name falsely implies that RMS was attempting to collect the Debt.
>
> 29. If Academy sent the letters, it is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

*Id.*

RMS answered the Amended Complaint on December 5, 2018 and Academy filed a letter request to Judge Azrack on January 2, 2019 for a pre-motion conference for purposes of making a Rule 12(b)(6) motion. *See* Answer [DE 18]; Letter Motion for Pre-Motion Conference [DE 20]. The pre-motion conference was held before Judge Azrack on March 14, 2019 and a briefing schedule was filed on March 27, 2019. *See* DE 23-24. Academy's motion was fully briefed and filed on July 9, 2019. *See* DE 28-31. On July 10, 2019, Plaintiff filed a letter seeking leave to file a sur-reply not to exceed three pages in order to address Academy's reply. *See* DE 32. Judge Azrack granted Plaintiff's application and Plaintiff's sur-reply was timely filed on July 25, 2019. *See* July 18, 2019 Order; Plaintiff's Sur-Reply Memorandum of Law ("Pl.'s Sur-Reply") [DE 33]. On November 13, 2019, Judge Azrack conducted a telephone conference with the parties and advised that she had referred Academy's motion to this Court. *See* DE 35. Judge Azrack directed counsel to inform her by November 20, 2019 whether they would consent to this Court's jurisdiction to decide Academy's motion and to file the

appropriate consent form.  *Id.*  To date, no consent form has been filed.  Therefore, the Court is addresses Academy's motion by means of a Report and Recommendation to Judge Azrack.

### III. DISCUSSION

#### A. The Parties' Positions

Academy contends it is obvious that it is not a "debt collector" under the FDCPA and that, in any event, the May 2017 letter was sent to Plaintiff more than one year prior to the filing of the initial Complaint in this action.  Defs.' Mem. at 1.  According to Academy, although the Amended Complaint does not indicate the date upon which Plaintiff received the May 2017 letter, there is an applicable presumption in the Second Circuit that a mailed document is received three days after the date on which it is sent.  *Id.* at 4.  As such, Academy maintains that Plaintiff's claim "with respect to the letter from Academy is [time]-barred," having been sent and received more than one year prior to the commencement of this lawsuit.  *Id.*  Further, Academy argues the Amended Complaint concedes that Academy is a creditor and not a debt collector as defined by the FDCPA.  *Id.* at 5.  On that basis, Academy maintains that Plaintiff cannot state a claim against it under the FDCPA.  *Id.*

With respect to Defendant's first argument, that this action is time-barred as against Academy in connection with the May 2017 letter, Plaintiff contends that "[t]he one-year statute of limitations period for an FDCPA violation begins to run on the date that the consumer receives the debt collection letter"  Plaintiff's Memorandum in Opposition ("Pl.'s Mem.") [DE 30] at 4.  According to Plaintiff, since the Amended Complaint does not contain a single factual allegation as to when Plaintiff received the letter, Defendant's motion must be denied.  *Id.* at 4-5.  With respect to Defendant's argument that the Amended Complaint fails to allege

5

Academy is a "debt collector," Plaintiff points out that although creditors are generally not subject to the FDCPA, a creditor becomes a debt collector – and thus subject to the statute – when "in the process of collecting his own debts, [the creditor] uses any name other than his own, which would indicate that a third person is collecting or attempting to collect such debts." *Id.* at 5-6 (citation omitted). Plaintiff argues that the Amended Complaint claims Academy used RMS's name in the process of attempting to collect the debt, misrepresenting that RMS was involved in the collection of the Debt. *Id.* at 6. As such, Plaintiff contends that Academy "squarely fits within the definition of a 'debt collector'" under the statute. *Id.* at 6. Further, Plaintiff states that even if Academy was not a debt collector under the FDCPA, Plaintiff has sufficiently alleged that "Academy unlawfully used RMS's name and letterhead (or vice-versa)" in violation of the "flat-rating" section of the statute which prohibits creating the false belief in a consumer that a person other than the creditor is participating in an attempt to collect the consumer's outstanding debt. *Id.* at 6-7.

      In reply, Academy points out that Plaintiff does not allege that he received the May 2017 letter after the July 2017 letter sent by RMS, on which the original Complaint – filed more than three months before the Amended Complaint – was based. *See* Defendant's Reply in Support of Motion to Dismiss ("Def.'s Reply") [DE 31]. On that basis, Academy maintains a presumption can be drawn that Plaintiff received the May 2017 letter before the July 2017 letter, thereby rendering time-barred Plaintiff's claims in connection with the May 2017 letter. *Id.* Moreover, Academy argues that Plaintiff's Complaint does not sufficiently allege a cause of action under 15 U.S.C. § 1692j because Plaintiff "would need to show that ACADEMY used the name of another entity to disguise its involvement in collecting its own debt. The letter in issue, however, on

6

ACADEMY letterhead, doesn't fit the criteria necessary to assert a claim under 15 U.S.C. § 1692j, despite Plaintiff's protestations otherwise." *Id.* at 3. [1]

### B. Standard of Review

When addressing a motion to dismiss brought pursuant to Rule 12(b)(6), the Court must liberally construe the claims set forth in the complaint, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Aegis Ins. Servs., Inc.*, 737 F.3d at 176; *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). The plaintiff must satisfy "a flexible 'plausibility standard,' " *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which is to say, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level'") (quoting *Twombly*, 550 U.S. at 555).

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). There the Court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. First, district courts are to "identify [ ] pleadings that, because they are no

---

[1] Plaintiff's sur-reply addresses this contention by pointing out that RMS is mentioned three times in the May 2017 letter. *See* Pl.'s Sur-Reply. Plaintiff also clarifies in his sur-reply that "among the issues present in this case is whether [] RMS . . . and Academy . . . are . . . one and the same [or] alter-egos of each other, act[ing] on the other's behalf (or use[ing] their names interchangeably) when collecting debts allegedly owed in violation of the FDCPA." *Id.* at 2.

7

more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see id.* at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' ") (quoting *Twombly*, 550 U.S. at 555).  Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft*, 556 U.S. at 679.  Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (citations omitted).

    **C.**    **The Fair Debt Collection Practices Act**

"Congress enacted the FDCPA 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Vincent v. The Money Store*, 736 F.3d 88, 96 (2d Cir. 2013) (quoting 15 U.S.C. § 1692(e)); *see also Benzemann v. Citibank, N.A.*, 806 F.3d 98, 100 (2d Cir. 2015) ("The purpose of the FDCPA is to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002))).  "To accomplish these goals, the FDCPA creates a private right of action for

8

debtors who have been harmed by abusive debt collection practices." *Benzemann*, 806 F.3d at 100 (citing 15 U.S.C. § 1692k).

To establish a claim under the FDCPA, "(1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a 'debt collector,' and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements." *Schuh v. Druckman & Sinel, L.L.P.*, 751 F. Supp. 2d, 542, 548 (S.D.N.Y. 2010) (internal citations omitted); *accord Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp. 3d 567, 578 (S.D.N.Y. 2015) (same); *see also Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008) ("[The FDCPA] grants a private right of action to a consumer who receives a communication that violates the Act.").

### 1. Whether Plaintiff's FDCPA claims in connection with the May 2017 letter are time-barred

According to the FDCPA, a claim must be commenced "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d); *Benzemann*, 806 F.3d at 99. Plaintiff commenced the instant lawsuit on July 10, 2018. Therefore, only acts which accrued on or after July 10, 2017 are considered timely. *See* 15 U.S.C. § 1692k(d). The two letters at issue in the Amended Complaint are dated May 18, 2017 -- almost two months prior to the applicable statute of limitations -- and July 27, 2017. *See* Am. Compl. Academy argues that Plaintiff's claim(s) "with respect to the [May 18, 2017] letter from Academy [are] [time]-barred," since the May 2017 letter was sent and received more than one year prior to the commencement of this lawsuit. Defs.' Mem. at 4. On the other hand, Plaintiff contends that the one-year statute of limitations for an FDCPA violation begins to run on the date that the consumer receives the debt collection letter. Plaintiff argues that since the Amended Complaint does not contain a single factual

9

allegation as to when Plaintiff received the letter, Defendant's motion must be denied. Pl.'s Mem. at 4-5.

Significantly, the Second Circuit has not yet spoken on the issue of whether an FDCPA violation occurs at the time a debt collector sends a letter to a debtor or whether it occurs when the debtor receives the communication. *See Gil v. Allied Interstate, LLC*, No. 217CV3362, 2017 WL 5135600, at *3 (E.D.N.Y. Nov. 3, 2017). A number of district courts in this Circuit have considered this matter and held that the one-year statute of limitations for an FDCPA violation begins to run on the date that the consumer receives the "allegedly unlawful communication." *Donchatz v. HSBC Bank USA, N.A.*, No. 14-cv-194, 2015 WL 860760, at *9 (W.D.N.Y. Feb. 27, 2015) (internal citations omitted); *Seabrook v. Onondaga Bureau of Med. Econ., Inc.*, 705 F. Supp. 81, 83 (N.D.N.Y. 1989) (noting that it was "more likely" that the statute of limitation would begin to run "on the date the debtor received the communication which supposedly violated the FDCPA"); *Somin v. Total Cmty. Mgmt. Corp.*, 494 F. Supp. 2d 153, 158 (E.D.N.Y. 2007) ("While a question may exist as to whether the cause of action accrues on the date upon which the allegedly unlawful communication is sent or received, there is no question that the latest date upon which the one year period begins to run is the date when a plaintiff receives an allegedly unlawful communication." (internal citations omitted)).

The Court is persuaded by the decisions of other district courts in this Circuit that the one-year statute of limitations period for a violation under the FDCPA begins to run on the date the consumer received the debt collection letter. Here, Plaintiff did not include in the operative pleading the date he allegedly received the May 18, 2017 debt collection letter. Nor has defendant Academy provided that information. Without such information, the Court cannot recommend dismissal of the asserted FDCPA claims as time-barred based on the May 18, 2017

10

letter. Nor can the Court determine, as a matter of law, the date upon which the Plaintiffs received the debt collection letters. Defendant argues that "there is a presumption in this Circuit that a mailed document is received three days after the date on which it is sent." Defs.' Mem. at 4; *see also Molnar v. Legal Sea Foods, Inc.*, 473 F. Supp. 2d 428, 430 (S.D.N.Y. 2007). However, the presumption only attaches "when the person who mailed the document followed regular office practice and procedure or has actual knowledge of having mailed the document." *Tanasi v. CitiMortgage, Inc.*, No. 3:16-cv-727, 2017 WL 2837477, at *18 (D. Conn. June 30, 2017) (quoting *Meckel v. Continental Res. Co.*, 758 F.2d 811, 917 (2d Cir. 1985)); *accord Isaacson v. New York Organ Donor Network*, 405 Fed. Appx. 552, 553 (2d Cir. 2011) (internal citations omitted); *Capobianco v. Sandow Media Corp.*, No. 11-civ.-3162, 2012 WL 4561761, at *3 (S.D.N.Y. Sept. 29, 2012) (internal citations and quotations omitted). Significantly, that information is lacking in the instant case. Therefore, the Court declines to recommend to Judge Azrack that Plaintiff's FDCPA claims based on the May 18, 2017 letter be dismissed as time-barred.

> **2.** ***As to whether Plaintiff sufficiently alleges that Academy is a "debt collector" under the FDCPA***

Defendant argues that Academy is a creditor, not a debt collector, and that the Amended Complaint concedes as much. *See* Defs.' Mem. at 5. Plaintiff responds that Academy became a debt collector within the meaning of the FDCPA when it used RMS's name in the process of attempting to collect the Debt for the purpose of having Plaintiff believe that RMS was involved in the debt collection. *See* Pl.'s Mem. at 6.

The FDCPA prohibits "debt collector[s]" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Pursuant to the FDCPA, a "debt collector" is defined as "any person who uses any

11

instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). "As a general matter, creditors are not subject to the FDCPA." *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998). "However, a creditor becomes subject to the FDCPA if the creditor 'in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.'" *Id.* (quoting 15 U.S.C. § 1692a(6)).

The Second Circuit first addressed the scope of this "false name exception" in *Maguire*, where plaintiff-appellant Karen Maguire appealed from a summary judgment decision in which the District Court for the District of Connecticut granted defendant Citicorp Retail Service's ("Citicorp") motion for summary judgment. 147 F.3d at 235. According to the facts in *Maguire*, Citicorp used the name "Debtor Assistance" – Citicorp's in-house collection division – in collection letters sent to the plaintiff. 147 F.3d at 236. In granting summary judgment to Citicorp, the district court concluded that because Debtor Assistance was a part of Citicorp, "Citicorp was not using an alias, or a name other than its own, and was not liable under the FDCPA." *Id.*

On reviewing *Maguire*, the Second Circuit clarified that a "creditor uses a name other than its own when it uses a name that implies that a third party is involved in collecting its debts, 'pretends to be someone else' or 'uses a pseudonym or alias.'" *Id.* The Court also noted that, "in evaluating potential violations of the FDCPA, the court must use an objective standard based on whether the 'least sophisticated consumer' would be deceived by the collection practice." *Id.* (citation omitted). Applying this standard, the court found that the letterhead used by Citicorp

12

created the impression that a third party, named "Debtor Assistance," was collecting Citicorp's debt, triggering application of the false name exception and bringing Citicorp within the ambit of the FDCPA. *Id.* at 236. The Court of Appeals reasoned that a jury could find that the "least sophisticated consumer" could be misled into believing that the letter had been written by a third party attempting to collect the debt and that Citicorp had used a name other than its own toward that end. *Id.* As such, the court held that the district court erred in granting Citicorp's motion for summary judgment on the plaintiff's FDCPA claims. *Id.* at 237.

More recently, the Second Circuit addressed a slightly different question, namely, "whether the false name exception can be invoked when the creditor uses the name of an actual, non-affiliated third-party to collect its debts." *Vincent v. The Money Store*, 736 F.3d at 97–98. In *Vincent*, the plaintiffs defaulted on their mortgages – held by The Money Store – and received "breach letters" from the law firm of Moss Codilis. *Id.* at 93. The breach letters were printed on Moss Codilis letterhead and stated that "this law firm" has been "retained" in order to "collect a debt for our client." *Id*. The plaintiffs sued the Money Store under the FDCPA, alleging that the breach letters created the false impression that a third party had been hired to collect the debts. *Id.* at 91. The Money Store moved for summary judgment on the asserted FDCPA claims and the district court granted The Money Store's motion. *Id.* at 94. The district court found that the plaintiffs could not rely on the false name exception because The Money Store had not "used" Moss Codilis's name to the extent that Moss Codilis [and not the Money Store] had sent out the breach letters. *Id.* at 94.[2]

---

[2] By agreement dated April 17, 1997, The Money Store contracted with Moss Codilis to prepare and mail breach notices to borrowers who, like plaintiffs, had defaulted on their loans. *Id.* at 93. Moss Codilis promoted the Program to lenders as a means of leveraging its status as a law firm to encourage repayment of loans from borrowers in default. *Id.*

13

On appeal, the Second Circuit analyzed the three elements that must be satisfied before a creditor can be considered a debt collector under the false name exception: "(1) the creditor is collecting its own debts; (2) the creditor uses a name other than its own; and (3) the creditor's use of that name falsely indicates that a third person is collecting or attempting to collect the debts that the creditor is collecting." *Id.* at 98. The court found that there was no dispute as to the first element – that The Money Store was collecting its own debts. *Id.* As to the second element, the court found that The Money Store did use a name other than its own by sending the breach letters, which appeared to be attorney collection letters from Moss Codilis. *Id.* The Court of Appeals concluded that a jury could find that Moss Codilis was not collecting The Money Store's debts and instead acted as a mere conduit for a collection process that The Money Store controlled." *Id.* at 104.

Although the parties disagreed markedly as to the nature of the tasks that Moss Codilis performed on behalf of The Money Store, the Second Circuit rejected The Money Store's contention that by generating and mailing breach letters alone, Moss Codilis was "collecting or attempting to collect" debts owed to The Money Store within the meaning of the FDCPA. *Id.* at 101. While the Money Store argued that Moss Codilis was involved in the debt collection process by generating the breach letters and sending them to the debtors, according to Moss Codilis, other than printing and mailing the letters and dealing with some follow-up limited to directing substantive phone calls from debtors to The Money Store, all meaningful collection efforts or attempts to "gather" the money owed were handled by The Money Store. *Id.* at 100-01. Indeed, the Court ultimately held that

> when determining whether a representation to a debtor indicates that a third party is collecting or attempting to collect a creditor's debts, the appropriate inquiry is whether the third party is making *bona fide* attempts to collect the debts of the

14

> creditor or whether it is merely operating as a 'conduit' for a collection process that the creditor controls.

*Id.* 104. The Second Circuit held that determining the nature of the debt collection was a question of fact and that the district court erred in granting The Money Store summary judgment on plaintiffs' FDCPA claims. *Id.* The Court concluded that if the breach letters falsely indicated that the third-party law firm was collecting or attempting to collect The Money Store's debts, The Money Store could be held liable under the FDCPA according to the false name exception. *Id.*

With these principles in mind, the Court notes that the Amended Complaint alleges Academy used a name other than its own, namely, RMS in the collection letters sent to Plaintiff, thereby falsely implying that RMS was attempting to collect the debt. *See* Am. Compl. ¶¶ 22-34. As a result, the facts as asserted in the Amended Complaint fit within the false name exception discussed in *Maguire* and *Vincent*. All three elements required to deem a creditor a debt collector under the exception have been stated in the Amended Complaint to the extent Plaintiff alleges that: (1) Academy is attempting to collect its own debt; (2) Academy is using a name other than its own, namely, RMS; and (3) Academy's use of RMS's name falsely implies that a third party – RMS – is attempting to collect the debt that Academy is collecting. *See Vincent*, 736 F.3d at 98. Further, Plaintiff states that Academy uses a name other than its own to imply that RMS was involved in collecting Academy's debt. *See Maguire*, 147 F.3d at 235.

Defendant's contention that the Amended Complaint concedes that Academy is a creditor and not a debt collector is unavailing since a creditor can come within the ambit of the FDCPA under the false name exception as noted. *See Maguire*, 147 F.3d at 237; *Vincent,* 736 F.3d at 98. Equally unpersuasive are Defendant's arguments that (1) the May 2017 letter was sent to Plaintiff by Academy on Academy's letterhead, and (2) no attempt was made to create the false belief in a consumer that a person other than the creditor was participating in the collection of the

15

debt. Since Plaintiff alleges – in the alternative – that either RMS or Academy sent *both* letters, including the July 2017 letter which appears to be a collection notice sent by RMS, a debt collection services company, Plaintiff has adequately stated sufficient facts to plausibly plead claims for relief against Academy as a "debt collector" under the FDCPA according to the false name exception. Moreover, as the Second Circuit pointed out in *Vincent*, determining the nature of the debt collection is a question of fact. *Vincent,* 736 F.3d at 104. That fact is disputed here, rendering Defendants' motion to dismiss ineffective as to this issue under Rule 12(b)(6).

Accordingly, the Court respectfully recommends to Judge Azrack that Defendant Academy's motion to dismiss claims asserted against it on the grounds of a purported "concession" that Academy is a creditor, not a debt collector, be DENIED.

### V. CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Azrack that Defendants' motion to dismiss be DENIED in its entirety.

### VI. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this report and recommendation to file written objections. See also Fed. R. Civ. P. 6(a), (e). Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joan M. Azrack. Any requests for an extension of time for filing objections must be directed to Judge Azrack prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*,

118 F.3d 900, 901 (2d Cir. 1997), cert. denied, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

                                          **SO ORDERED:**

Dated: Central Islip, New York
       January 13, 2020

                                          <u>/s/ A. Kathleen Tomlinson</u>
                                          A. KATHLEEN TOMLINSON
                                          United States Magistrate